UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| LACOSTE AVIATION, LLC | * | CIVIL ACTION NO. 22-4603 |
| | * | |
| VERSUS | * | SECTION: "A"(1) |
| | * | |
| STARSTONE NATIONAL INSURANCE COMPANY | * | JUDGE JAY C. ZAINEY |
| | * | |
| | * | MAGISTRATE JUDGE JANIS VAN MEERVELD |
| | * | |
| | * | |

• • • • • • • • • • • • • • • • • • • • • • • • • • • • • • • •

## ORDER AND REASONS

The following motions are before the Court: **Motion for Summary Judgment (Rec. Doc. 13)** filed by Defendant, StarStone National Insurance Company ("StarStone"), and **Motion for Summary Judgment (Rec. Doc. 29)**, filed by Plaintiff, Lacoste Aviation, LLC ("Lacoste"). Both motions are opposed. The motions, submitted for consideration on January 17, 2024,[1] are before the Court on the briefs without oral argument.[2] For the reasons that follow, StarStone's motion is **DENIED**, and Lacoste's motion is **GRANTED IN PART AND DENIED IN PART**.

## I.    Background

This matter arises from an insurance dispute relating to damage sustained by an aircraft owned by Lacoste. StarStone issued an aviation insurance policy to Lacoste providing aircraft damage coverage from March 15, 2021, through March 15, 2022, for a 1991 Beechcraft C90A. (Complaint ¶ IV). On December 22, 2021, the aircraft underwent routine phase maintenance inspections, during which mechanics discovered foreign object debris ("FOD") damage in the right engine. (*Id.* ¶ V).

---

[1] StarStone's motion was initially set for submission on December 6, 2023. Upon the filing of Lacoste's motion, the Court continued StarStone's motion to January 17, 2024, so that the motions could be considered simultaneously.

[2] StarStone initially requested oral argument alongside its motion, but subsequently withdrew its request unless the Court had specific questions. Lacoste then requested oral argument alongside its motion. The Court does not find oral argument necessary and has therefore decided the motions on the briefs.

The policy provides general FOD damage coverage; however, it excludes loss or damage due to wear, tear, abuse, and other specified causes. (*Id.* ¶ VII). If damage is the result of a "single recorded incident which requires immediate repair," then it is not wear-tear and is covered. (*Id.* ¶ VIII; Rec. Doc. 1-1, at 20). Upon discovering the damage, Lacoste had the aircraft repaired,[3] costing approximately $79,000. (*Id.* ¶ IX). Lacoste informed StarStone of the claim, and included a copy of the aircraft's logbook, which contained a record of the damages and repairs. (*Id.* ¶ X). In response, StarStone notified Lacoste that its request was insufficient on the grounds that Lacoste (1) failed to report when, where, and how the damage occurred, and (2) failed to indicate how the damage was a result of a single recorded incident which required immediate repair. (*Id.* ¶¶ XI-XII).

Lacoste brought this suit to compel payment for these repairs. StarStone maintains that the damage falls within the wear-tear exclusion and thus is not covered under the policy. It asserts that Lacoste has failed to show that the damage is the result of a single recorded incident, and argues that the damage did not require immediate repair because it was not discovered until routine maintenance. Setting forth these arguments, StarStone has moved for summary judgment. Lacoste opposes the motion. Lacoste has also moved for summary judgment, attaching declarations in support of its position and claiming that the damage was the result of a single recorded incident which required immediate repair. StarStone opposes Lacoste's motion. The parties present opposing interpretations of the policy. Lacoste further requests attorney fees and penalties under Louisiana law. The claims and cross-motions for summary judgment are discussed below.

## II.    Legal Standard

---

[3] The damage rendered the aircraft unairworthy under federal regulations. (Rec. Doc. 16, at 7).

Summary judgment is proper where there is "no genuine dispute of material fact" and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). That is, it is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 248). The court must draw all justifiable inferences in favor of the non-moving party. *Id.* (citing *Anderson*, 477 U.S. at 255). Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial. *Id.* (citing Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986)). Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. *Id.* (citing *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993)).

When faced with a well-supported motion for summary judgment, Rule 56 places the burden on the non-movant to designate the specific facts in the record that create genuine issues precluding summary judgment. *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). The district court has no duty to survey the entire record in search of evidence to support a non-movant's position. *Id.* (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1992); *Nissho-Iwai Am. Corp. v. Kline*, 845 F.2d 1300, 1307 (5th Cir. 1988)).

### III.    Analysis

3

### A. Coverage

The policy at issue covers "direct and accidental physical damage to the aircraft," subject to a series of exclusions. (Rec. Doc. 13-3 at 5). Relevant to this claim is Exclusion S, which excludes "loss or damage due to wear, tear, abuse, deterioration, freezing, mechanical or electrical failure, hidden or latent defect, or any combination of the foregoing causes." (*Id.* at 7). Wear-tear is defined in the "Aircraft Turbine Engine and Auxiliary Power Unit Endorsement" as follows:

> Damage caused by an object not a part of the engine or its accessories is foreign object damage. If the damage is the result of a single recorded incident which requires immediate repair, it is covered. If the damage is not the result of a single recorded incident, it is "wear-tear" and not covered.

(*Id.* at 20). Therefore, for StarStone's motion to be granted, it must be entitled to judgment as a matter of law as to the fact that the damage at issue was *not* the result of a single recorded incident which requires immediate repair, and therefore is excluded under the policy. For Lacoste's motion to be granted, it must prove that the damage *was* the result of a single recorded incident which requires immediate repair, and therefore is covered under the policy.

Louisiana law requires insurance contracts to be construed by employing general rules of interpretation from the Civil Code. *Hebert v. Webre*, 982 So. 2d 770, 773 (La. 5/21/08). If the language is clear and expresses the intent of the parties, it is to be enforced as written. La. Civ. Code arts. 2045-2057. "However, if the insurance policy is susceptible to two or more reasonable interpretations, then it is considered ambiguous and must be liberally interpreted in favor of coverage." *Supreme Servs. & Specialty Co., Inc. v. Sonny Greer, Inc.*, 958 So. 2d 634, 638 (La. 5/22/07). The burden of proof moves from the insured to the insurer to show that a policy's exclusion applies. *Blackburn v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 784 So. 2d 637 (La. 4/3/01). Here, because it is uncontested that FOD caused the damage, the controlling question is whether Exclusion S precludes coverage. This Court must therefore determine whether StarStone

4

has reasonably interpreted Exclusion S in arguing that the damage is not covered. If it has, the inquiry shifts to whether Lacoste has responded with an equally reasonable interpretation.

The parties agree that the damage is covered if two requirements are met: (1) the damage was the result of a single recorded incident, and (2) that damage requires immediate repair. However, the policy fails to define "single recorded incident" or "immediate repair." Therefore, the ordinary meanings of these terms control. Under the governing standard, for StarStone's interpretation to prevail, it must be the only reasonable interpretation. If both parties present reasonable interpretations, then the policy is ambiguous and the interpretation that favors the insured controls.

### 1. Single Recorded Incident

As noted above, the policy fails to define the term "single recorded incident." Therefore, a plain language interpretation governs. StarStone asserts that there is no evidence that a single incident occurred. In fact, it claims that the evidence suggests that the damage was *not* the product of a single recorded incident because the pilot of the aircraft, Blake Wedig, did not know when or how the damage occurred. However, Lacoste provided StarStone with the aircraft logbook, which contains a record from Innovative Turbine Aircraft Solutions, dated December 22, 2021, stating: "Removed this engine due to *one time occurrence compressor FOD*, found after landing at KASD, for phase inspection. Determined *not to be normal wear and tear*." (Rec. Doc. 1-6, at 2) (emphasis added). As discussed below, although the mechanic's opinion that it was not wear and tear does not conclusively determine that the damage is covered, the record's statements that (1) the incident was a one-time occurrence and (2) was not ordinary wear and tear are sufficient to demonstrate that the damage was the result of a single incident, especially in the face of no contrary evidence.

Although Wedig was unable to identify the exact moment when the incident occurred, that information fails to prove that it was not the result of a single incident.[4]

Additionally, StarStone's policy requires that the single incident be recorded. However, it fails to explain what qualifies as "recorded." StarStone asserts that the policy requires a record that clearly shows the when, where, and how of the incident causing the damage. It argues that the damage at issue cannot be the result of a single recorded incident because Wedig reported that he did not know where or when the damage occurred. In his statement, Wedig answered "N/A" to the purpose of the flight during which the airplane was damaged. (Rec. Doc. 13-8). He further wrote that the damage was discovered during routine phase maintenance, and that the cause of the damage was unknown. (*Id.*). StarStone claims that Wedig's uncertainty surrounding the incident precludes Lacoste from properly recording the incident. In further support, StarStone describes a former claim by Lacoste which included these extensive details, which StarStone facially accepted and covered, as proof that Lacoste has formerly complied with these alleged requirements.[5]

This Court believes that StarStone presents a reasonable interpretation of the term "recorded." Here, "single recorded incident" could reasonably be understood to mean that the details of the incident itself were recorded, including the details of how, when, and where it happened. This requirement of detail does not contradict the basic terms of the policy, and thus StarStone's interpretation is reasonable. Therefore, the inquiry shifts to whether Lacoste's interpretation of the policy is also reasonable; if it is, then Louisiana law dictates that the ambiguity be settled in favor of Lacoste.

---

[4] As described at length below, pilots are frequently unaware that FOD damage has occurred. The mere fact that Wedig did not personally witness the ingestion of FOD into the engine is not sufficient to overcome the contrary evidence provided by Lacoste. Additionally, that Wedig previously witnessed debris kick up into the engine is insufficient on its own to discredit Lacoste's evidence.

[5] While it is compelling that Lacoste provided these details in a previous claim, the Court notes that Lacoste's decision to provide more detail does not alter the reporting threshold to successfully make a claim under the policy.

In response, Lacoste argues that StarStone is unclear in its definition of "recorded," and that under 14 C.F.R. § 43[6] and 14 C.F.R. § 91.417,[7] all maintenance and repairs must be recorded in an aircraft's logbooks. It claims that because the mechanic, Rich Heimbuck, recorded an entry stating that the damage was the result of a one-time occurrence, and because that entry was provided alongside its claim, the policy requirements were satisfied. Lacoste has also attached two declarations in favor of its position, which state that FOD damage is rarely witnessed by aircraft operators and therefore is often discovered during routine maintenance.

Lacoste claims that the record in the aircraft's logbook detailing (1) the repairs, (2) the cost of the repairs, and (3) Heimbuck's opinion that the damage was not ordinary wear and tear is sufficient to satisfy the requirements of the policy. Although the policy's wear-tear definition renders Heimbuck's opinion unpersuasive as to whether the policy covers the damage, the governing regulations refer to the logbook as a "record." *See* 14 C.F.R. §§ 43.9, 91.417. Therefore, an aircraft's owner could reasonably understand the term "recorded" in the context of an aircraft insurance policy to refer to FAA-mandated records.

Additionally, Lacoste presented the declarations of individuals with extensive aircraft maintenance and aviation experience. These declarants have experienced FOD damage on numerous occasions and report that pilots are rarely aware of the ingestion of FOD at the time it occurs. Heimbuck stated that "FOD damage most often occurs during landing of an aircraft when objects on a runway are kicked-up and ingested into an engine. During landing a pilot's attention is focused on the location of the aircraft relative to the runway, the aircraft's gauges . . . [,] and the

---

[6] 14 C.F.R. § 43.9 states that any individual who maintains, performs maintenance, rebuilds, or alters an aircraft or component part must make an entry in the maintenance record, including a description of the work, the date of completion of the work, the name of the individual, and information from the person approving the work.

[7] 14 C.F.R. § 91.417 requires that the registered owner or operator keep the same records of maintenance mandated in 14 C.F.R. § 43.9. It also requires records relating to "the total time in the service of the airframe, each engine, each propeller, and each rotor"; the status of life-limited parts; the time since last overhaul of all items; the inspection status of the aircraft; the status of airworthiness directives and safety directives; and other information.

mechanics of landing an aircraft." (Rec. Doc. 29-3, Unsworn Declaration of Rick Heimbuck Pursuant to 28 U.S.C. § 1746, ¶ XIV). In fact, "[t]he vast majority of FOD damage occurs without a pilot's knowledge and is discovered during FAA required maintenance inspections." (*Id.* ¶ XV).[8] Considering how infrequently aircraft operators are aware that the aircraft has suffered FOD damage and how frequently such damages are discovered during routine maintenance, it is reasonable for a pilot to consider a "recorded" incident to refer to logbook records as opposed to a record providing the incident's specific details.

Insurance policies "should not be interpreted in an unreasonable or a strained manner so as to enlarge or to restrict its provisions beyond what is reasonably contemplated by its terms or so as to achieve an absurd conclusion." *Sher v. Lafayette Ins. Co.*, 988 So. 2d 186, 193 (La. 4/8/08). Although StarStone may consider the inclusion of logbook records to be a broad reading of the policy, largely because these records are required by law, Lacoste's reading is reasonable.[9] "If the insurance policy is susceptible to two or more reasonable interpretations, then it is considered ambiguous and must be liberally interpreted in favor of coverage." *Sonny Greer, Inc.*, 958 So. 2d at 368. Because both interpretations are reasonable, the policy is ambiguous as a matter of law and must be interpreted in favor of Lacoste.[10]

---

[8] In addition to the Unsworn Declaration of Rick Heimbuck, Lacoste provided the Unsworn Declaration of Dennis Hoffman Pursuant to 28 U.S.C. § 1746 (Rec. Doc. 29-5). Hoffman managed the aircraft in question and is a licensed commercial pilot with over fifty years of experience and 25,000 hours of flight time. (*Id.* ¶¶ I-II). Hoffman stated that, in his extensive experience, he has flown at least three aircraft that suffered FOD damage, yet he has "never been able to provide any information as to the cause of the damage, how the damage occurred, when and/or where the damage occurred, how long it had existed or whether it occurred on any specific day/time, flight, airport, or location." (*Id.* ¶ VIII). In fact, "[i]n these instances, the FOD damage was not discovered until the aircraft were brought in for FAA mandated inspections." (*Id.*).

[9] Although this would mean that any law-abiding aircraft owner's single-occurrence FOD damage would be covered, this is reasonable given the provision's general intent to exclude damage from wear and tear. Additionally, StarStone claims that the incident itself was not recorded in the logbook. However, Heimbuck's record explicitly states that the engine was removed "due to one time occurrence compressor FOD." (Rec. Doc. 1-6, at 2). Although this does not provide the level of detail that StarStone asserts is necessary, it memorializes in an FAA-mandated record that a single incident caused the damage.

[10] If StarStone desires the level of detail asserted in its motion, it must redefine the terms of its policy to make those requirements clear.

### 2. Immediacy

Although the first prong has been interpreted in Lacoste's favor, coverage still depends upon whether the damage at issue satisfies the "immediacy" prong of the provision. As described above, the policy requires that the FOD damage necessitate immediate repair for coverage to attach. As was the case with the term "single recorded incident," the policy fails to define "requir[ing] immediate repair." StarStone asserts that the immediacy requirement refers to the incident—that is, upon suffering the damage, the aircraft must be immediately repaired. Lacoste argues that the requirement refers to the *discovery* of the damage—that is, if the damage must be repaired upon discovery, then it is covered.

As with the first prong, both interpretations are facially reasonable. StarStone's interpretation that the damage must necessitate immediate repair upon the occurrence of the incident does not directly contradict the policy's terms. However, Lacoste has provided evidence calling StarStone's interpretation into question. The immediacy prong requires the FOD damage to render the aircraft unfit for flight for coverage to exist. This does not necessarily mean that the aircraft must outwardly indicate that it is damaged or unsuitable to fly for the damage to be covered. Rather, if an aircraft is deemed unairworthy by FAA standards after a single recorded incident—as the aircraft at issue was—then it requires immediate repair before it may fly again.[11] Further, as described above, pilots are not always aware that FOD has damaged the aircraft. "The vast majority of FOD damage . . . is discovered during FAA required maintenance inspections." (Rec. Doc. 29-3, ¶ XV); (*see also* Rec. Doc. 29-5, ¶ VIII). Considering that pilots are rarely aware that their aircraft ingested FOD at the time it occurs, it is reasonable that immediacy depends upon

---

[11] This aligns with the idea that the provision is designed to exclude wear-tear damage. Without further definition, the "immediate repair" prong is, in theory, designed to exclude those damages which build up over time and eventually require repair, not to exclude single incidents which render aircraft unairworthy but are not immediately discovered.

discovery of the damage. If it did not, very few FOD incidents would be covered. Finally, the policy language does not contradict Lacoste's interpretation. There is no hint in the language that it must be repaired upon the *suffering* of the damage.

Therefore, as with the first prong, Lacoste has provided a reasonable interpretation. The Court is not convinced that StarStone's interpretation is as reasonable as Lacoste's. Even if it were, as described above, where a provision of an insurance agreement is ambiguous, the court must liberally construe the policy in favor of the insured. Therefore, the immediacy requirement shall be understood to mean immediate repair is required upon discovery of the damage, in favor of Lacoste.[12]

Both prongs are ambiguous under the terms of the policy. Therefore, both are to be liberally construed in favor of Lacoste, and the damage is covered under the agreement. *See Sonny Greer, Inc.*, 958 So. 2d at 638. Lacoste is entitled to payment in the amount of $88,349.35[13] plus legal interest in accordance with controlling law.

### B. Attorney Fees and Penalties

Lacoste also asserts that Starstone's denial of coverage subjects it to penalties and attorney fees. Lacoste argues that, under La. R.S. § 22:1973[14] and La. R.S. § 22:1892,[15] StarStone's denial

---

[12] Again, if StarStone desires its policy to require immediate repair upon the occurrence of the incident, it must make such a requirement clear in its policy.

[13] The amount charged for the repairs, as evidenced by Rec. Doc. 1-6.

[14] La. R.S. § 22:1973(B) provides that insurers owe a duty of good faith and fair dealing, which can be breached in various ways. Lacoste claims that StarStone breached its duty by engaging in the following acts: (1) failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such a failure is arbitrary, capricious, or without probable cause; (2) misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue; and (3) failing to pay claims pursuant to R.S. § 22:1893 when such a failure is arbitrary, capricious, or without probable cause. The statute provides that, if any of these actions is committed, the claimant may be awarded penalties assessed against the insurer.

[15] La. R.S. § 22:1892(A)(1) provides as follows: "All insurers issuing any type of contract . . . shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured or any party in interest. The insurer shall notify the insurance producer of record of all such payments for property damage claims made in accordance with this Paragraph." Subsection (B)(1)(a) states that where such failure to pay is arbitrary, capricious, or without probable cause, the insurer shall be subject to penalty and attorney fees.

was arbitrary and capricious and without probable cause because the determination was "unsupported and unreasonable." (Rec. Doc. 29-1, at 9-10). StarStone opposes this claim, stating that it merely complied with what it believes to be the plain, unambiguous terms of the policy and that Lacoste had previously complied with this interpretation, thus demonstrating that it is reasonable. (Rec. Doc. 36, at 14). Because Lacoste has failed to sufficiently show why it is entitled to penalties or attorney fees, this request is denied.

"[S]tatutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on the defense." *Reed v. State Farm Mut. Ins. Co.*, 857 So. 2d 1012, 1021 (La. 10/21/03). Because the statutes at issue are penal in nature, they must be construed strictly. *Id.* at 1020. Further, a party may only receive penalties under the statute that provides the greater penalty. *Calogero v. Safeway Ins. Co. of La.*, 753 So. 2d 170, 174 (La. 1/19/00).[16] To prove that it is entitled to penalties, the insured must establish the following: (1) the insurer received satisfactory proof of loss;[17] (2) the insurer failed to pay the claim within the applicable statutory period (thirty or sixty days); and (3) the insurer's failure was arbitrary and capricious and without probable cause. *Talbert v. State Farm Fire & Cas. Ins. Co.*, 971 So. 2d 1206, 1212 (La. App. 4th Cir. 11/14/07); *see also Reed*, 857 So. 2d at 1021 ("The sanctions of penalties and attorney fees are not assessed unless a plaintiff's proof is clear that the insurer was in fact arbitrary, capricious, or without probable cause in refusing to pay."). "Whether or not a

---

[16] However, because La. R.S. § 22:1892 provides for attorney fees and § 22:1973 does not, a plaintiff may simultaneously receive penalties under section 22:1973 and attorney fees under section 22:1892. *Calogero*, 753 So. 2d at 174. The Court notes that *Calogero* predated the statutes' current numeric identifiers, but the statutes are the same.

[17] Satisfactory proof of loss "is only that which is sufficient to fully apprise the insurer of the insured's claims." *La. Bag Co., Inc. v. Audubon Indem. Co.*, 999 So. 2d 1104, 1119 (La. 12/2/08). Further, the form of proof of loss is "a flexible requirement to advise an insurer of the facts of the claim. As long as the insurer receives sufficient information to act on the claim, the manner in which it obtains the information is immaterial." *Id.* Having found that the damage is covered, this Court believes that the provision of the maintenance records, alongside the mechanic's opinion regarding the damage, is sufficient to prove loss. However, neither party focused on this issue in briefing the penalties cause of action, and this Order does not discuss this element because the claim fails on different grounds.

refusal to pay is arbitrary, capricious, or without probable cause depends on the facts known to the insurer at the time of its action" and "should not be inferred from an insurer's failure to pay within the statutory time limits when [a reasonable and legitimate question regarding the extent of the claim] exists." *Reed*, 857 So. 2d at 1021. The insurer's actions are arbitrary and capricious where it "knowingly commit[s] actions which are completely unjustified, without reasonable or probable cause or excuse." *Holt v. Aetna Cas. & Sur. Co.*, 680 So. 2d 117, 130 (La. App. 2 Cir. 9/3/96) (citing *La. Maint., Inc. v. Certain Underwriters at Lloyd's of London*, 616 So. 2d 1250 (La. 1993)). This phrase "is synonymous with 'vexatious,' and describes an insurer whose willful refusal of a claim is not based on a good-faith defense." *Bosley v. Oliphint Enters., LLC*, 244 So. 3d 692, 700 (La. App. 2 Cir. 9/27/17).

     This Order has discussed at length the policy in question and the interpretations provided by the parties. As stated above, because both parties have presented reasonable interpretations of the policy, the provision's ambiguity is settled in favor of the insured. This, however, does not mean that the insurer's misinterpretation of its policy automatically exposes it to penalties. Lacoste cites *Carney* for the proposition that limitations in insurance policies must be clearly defined because, if they are not, "then such words must be construed in the sense which is more favorable to the insured, unless such interpretation would lead to absurd results." *Carney v. Am. Fire & Indem. Co.*, 371 So. 2d 815, 818 (La. 1979) (quoting *Hendricks v. Am. Emp. Ins. Co.*, 176 So. 2d 827, 830 (La. App. 2 Cir. 1965)). However, although *Carney* states that the insurer's risk of misinterpreting its policy "will not be considered as reasonable ground for delaying the payment of benefits," and although "insurers should not have their policy provisions interpreted at the expense of the insured," the question remains whether the denial is arbitrary and capricious. *Id.* at

819 (providing that although the policy was ambiguous, the insurer was not liable for penalties because their denial was not arbitrary and capricious).[18]

Louisiana courts have declined to find bad faith where doubt existed as to whether the plaintiff was covered. One court held that the insurer did not act arbitrarily and capriciously because it "presented good faith, reasonable arguments" and because "[n]o party ha[d] pointed out any legal authority which show[ed] Lloyd's coverage defense to have been frivolous." *Howell v. Am. Cas. Co. of Reading, Pennsylvania*, 691 So. 2d 715, 727 (La. App. 4 Cir. 3/19/97). Others have denied such penalties where activity was "noncompliant, but far from vexatious" and where the "initial decision to deny the claim [was] wrong, but . . . was not arbitrary, capricious, or without probable cause." *Bosley*, 244 So. 3d at 700.

Here, although StarStone's interpretation was incorrect as a matter of law, this Court does not believe it acted vexatiously, especially considering Louisiana courts' application of the penalty statutes.[19] The insurer's arguments were not frivolous; rather, its arguments were presented in good faith. It would be overly expansive to find that a penalty statute, which is to be construed in a severely limited manner, applies each time that an insurer disputes coverage of a claim based on a misinterpretation. StarStone merely argued that coverage did not attach because there was not sufficient detail to qualify as a recorded incident under the policy's terms and because immediacy referred to the time of the injury. This Order has noted that these were reasonable interpretations, and thus penalties are not warranted for withholding the award. This finding is further bolstered

---

[18] The Louisiana Supreme Court has made clear that misinterpretation of a policy is not a defense to a cause of action for fees and penalties. *La. Bag Co.*, 999 So. 2d at 1117. Insurers cannot rely on their own misinterpretation to avoid penalties. However, the language that a misinterpretation "will not relieve the insurer of the payment of penalties and attorney's fees," *id.* (quoting *Carney*, 371 So. 2d at 819), does not equate to a mandate that such a misinterpretation guarantees the award of penalties and fees. A showing of arbitrariness and capriciousness is still required.

[19] For instance, in *Dey v. Williams*, the court found that an insurer was arbitrary and capricious where it was informed of the severity and causation of the plaintiff's injuries on seven occasions, but waited two years to hire its own doctor to dispute causation. 356 So. 3d 562, 568 (La. App. 4 Cir. 12/29/22).

by the fact that the parties had previously engaged in a claims process during which Lacoste complied with StarStone's supported interpretation of the policy. For these reasons, this Court does not believe that StarStone acted in an arbitrary and capricious manner or without probable cause in denying the claim at issue.

Lacoste also claims that bad faith penalties are warranted because StarStone misrepresented policy provisions. "A misrepresentation can occur when an insurer either makes untrue statements to an insured concerning pertinent policy provisions or fails to divulge pertinent facts to the insured." *Transamerica Life Ins. Co. v. Fuselier*, No. 23-138, 2023 WL 8249636 (La. App. 5 Cir. 11/29/23) (citing *Dufrene v. Gautreau Fam., LLC*, 980 So. 2d 68, 85 (La. App. 5 Cir. 2/22/08)). Lacoste has failed to show or allege any misrepresentation of policy provisions. Even if the Court were to view the pleadings liberally, StarStone cannot be said to have misrepresented or affirmatively withheld information relating to its policy. Although this Order finds that the policy's provisions do not unambiguously support StarStone's interpretation, its interpretation does not rise to the level of an affirmative misrepresentation or withholding of pertinent facts from the insured. Further, StarStone's request that Lacoste provide additional details to receive payment aligns with Lacoste's behavior in a previous claim, in which it provided the requested details. For these reasons, StarStone is not liable for penalties under the misrepresentation provision.

Finally, Lacoste has requested an award under La. R.S. § 22:1973(B)(6), which authorizes penalties for failure to pay under section 22:1893 in an arbitrary and capricious manner or without probable cause. However, section 22:1893 exclusively governs claims involving immovable property. Because this claim is for damages to an aircraft, not immovable property, section 22:1893 is inapplicable, and Lacoste's claim for penalties under this provision is denied.

Accordingly;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 13)** filed by Defendant, StarStone National Insurance Company, is **DENIED**.

**IT IS FURTHER ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 29)** filed by Plaintiff, Lacoste Aviation, LLC, is **GRANTED IN PART AND DENIED IN PART**, as described above.[20]

February 28, 2024

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE

---

[20] The Court notes that the Complaint contains various other requests in its prayer for relief. The Court considers this Order to be dispositive of all requests in the Complaint.

15